UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| WILLIAM SLADE SULLIVAN §<br>    *Plaintiff* §<br>v. §<br>THE CITY OF ROUND ROCK, TEXAS; §<br>OFFICERS N.J. ZOSS, K.A. MAYO, AND §<br>A.P. BALLEW; AND §<br>RCI HOSPITALITY HOLDINGS, INC. A/K/A §<br>RICK'S CABARET INTERNATIONAL, INC., §<br>AND A/K/A RCI DINING SERVICES (ROUND §<br>ROCK), INC., §<br>    *Defendants* § | CIVIL ACTION NO. 1:14-CV-00349-LY<br><br>JURY DEMANDED |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

**TO THE HONORABLE COURT:**

Since this lawsuit was initially filed William Slade Sullivan has died as a result of the injuries and wrongs later described in this Second Amended Complaint. Plaintiff has filed a Suggestion of Death and Motion to Substitute as the Proper Party the Mother of William Slade Sullivan (Rosemary Claus Sullivan) pursuant to FRCP 25, and that motion remains pending before the Court.

In addition to the fact that William Slade Sullivan has died, a probate proceeding has subsequently been filed in the Probate Court in Williamson County, Texas, in which Aaron Brothers was named in the will of Mr. Sullivan as the Executor of his Estate. Therefore, Aaron Brothers as Executor of the Estate of William Slade Sullivan, Deceased, should also be added as a proper party plaintiff in this case.

There is no objection by any of the Defendant parties to the addition of these proper Plaintiff parties, and because of the time limitations necessitating the prompt filing of this pleading, all Plaintiff parties will hereafter be referred to as "Plaintiffs" or "Plaintiff". Plaintiffs

request Leave of Court to re-style this case to properly identify all parties Plaintiff and Defendant.

Plaintiffs bring this action against the City of Round Rock, Texas, (hereafter, "the City") for injuries to and damages resulting pursuant to 42 U.S.C. §1983 and §1988, as well as the Fourth and Fourteenth Amendments to the United States Constitution.

Plaintiffs bring this action against Officers N.J. Zoss, K.A. Mayo, and A.P. Ballew, police officers (collectively, "Officers") of the City of Round Rock, Texas, in their individual capacities pursuant to 42 U.S.C. §1983 and § 1988, as well as the Fourth and Fourteenth Amendments to the United States Constitution.

Plaintiffs bring this action against RCI Hospitality Holdings, Inc. f/k/a Rick's Cabaret International, Inc., (hereafter, "Rick's") under both general theories of common law negligence, as well as pursuant to §2.02 of the Alcoholic Beverages Code.

Plaintiffs comply with the pleading requirements of FRCP Rule 8(a)(2) and the requirements of *Ashcroft v. Iqbal*, 556 U.S. 129 S.Ct. 1937, 1949 (2009) that "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

## I. PARTIES

1.1     William Slade Sullivan, deceased, resided within the Austin Division of the Western District of Texas, at the time of the filing of this lawsuit.

1.2     Defendant City of Round Rock is a municipal corporation located within the boundaries of the Austin Division of the Western District of Texas.  Defendant has been served with process and has filed an answer in this action.

1.3     Defendant Officers were at all times relevant to this cause of action duly appointed and acting officers of the police department of the City of Round Rock, within the course and scope of their employment with the City. Defendants have been served with process and have filed an answer in this action.

1.4     Defendant RCI Hospitality Holdings, Inc., f/k/a Rick's Cabaret International, Inc., hereafter identified as "Rick's" is a Texas corporation doing business in Texas, as well as many other U.S. states.  These actions stem from incidents occurring at one of Defendant Rick's clubs, commonly known as Rick's Cabaret North Austin Club located at 3105 I-35 in Round Rock, Texas.  This Defendant has been served with process and has appeared by filing a Rule 12(b)(6) motion in this action.

## II. JURISDICTION AND VENUE

2.1     Plaintiff brings his claims pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 and these statutes provide jurisdiction over Plaintiff's constitutional claims for redress, which are conferred on this Court by 28 U.S.C. §1343(a)(3).

2.2     Federal question jurisdiction is conferred on this Court by 28 U.S.C. §1331, because this action arises under the Constitution and laws of the United States.

2.3     This Court has supplemental jurisdiction over all other claims asserted under the laws of the State of Texas, pursuant to 28 U.S.C. §1367(a).

2.4     Venue is proper in the Western District of Texas, Austin Division, as this is the district where the claim arose in accordance to 28 U.S.C. § 1391(b).

## III. DUTY AND LAW APPLICABLE

3.1     Plaintiff was subjected to excessive force in violation of his rights guaranteed to him by the Fourth and Fourteenth Amendments of the United States Constitution.

3.2     Plaintiff commences this action pursuant to 42 U.S.C. §1983, which provides in relevant part for redress for every person within the jurisdiction of the United States for the deprivation, under color of state law, of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

3.3     The Defendant Officers were acting under the color of law and are liable under 42 U.S.C. §1983.

3.4     Defendant Rick's Cabaret International, Inc., d/b/a Rick's Cabaret North Austin is liable to Plaintiff under general theories of negligence and common law, as well as §2.02 of the Alcoholic Beverage Code (known as "the Dram Shop Act").

## IV. Facts

4.1     Defendant Rick's is a "provider" of alcoholic beverages as defined in §2.01 of the Alcoholic Beverages Code, and Rick's provides, sells and serves alcoholic beverages through its various locations, including the Rick's North Austin club involved in this lawsuit.  Plaintiff William Slade Sullivan (hereinafter "Sullivan") was a long-time and frequent customer of Rick's North Austin club, often buying and drinking alcoholic beverages there.  Because of the considerable sums of money Sullivan had spent at Rick's, Sullivan was considered by Rick's to be a "VIP" customer and was well known by Rick's management and staff.  As a VIP customer, Sullivan was allowed to drink in a special section of Rick's and was given extra attention and service from Rick's management, staff, and employees.  In order to encourage Sullivan to visit and drink heavily at the establishment, Rick's management had its employees and staff befriended and drank with Sullivan.  To further encourage Sullivan to visit and drink heavily at the establishment, on numerous occasions Rick's management and employees offered and provided Sullivan with transportation home.

4.2     On March 20, 2014, Rick's employees knew that for several hours Sullivan had already been at another establishment that is a direct competitor of Rick's.  Employees of Rick's sent multiple text messages and made multiple phone calls to Sullivan to encourage him to leave the competitor's establishment and come to Rick's to drink alcoholic beverages.  At the time Rick's employees were contacting Sullivan, they knew him to be lonely and depressed, and they encouraged Sullivan to come drink with them to have a good time.  To encourage Sullivan to come drink at Rick's that night, Rick's employees told Sullivan that they had already arranged for a shuttle to take him home when he was finished.

4.3     In response to the encouragement of Rick's employees, at approximately 12:30 a.m. on March 21, 2014, Sullivan arrived at Rick's establishment.  When Sullivan arrived at Rick's, he was promised a ride home by a Rick's employee.  Rick's floor Manager Jason Cox took Sullivan's keys, also promising that they would take him and his vehicle home when he was finished.  At the encouragement of Rick's management, employees, and staff, Sullivan stayed at Rick's and drank numerous alcoholic beverages.

4.4     On the morning of March 21, 2014, Sullivan stayed at Rick's and drank numerous alcoholic beverages from 12:30 a.m. until 3:30 a.m.  During his time at Rick's that morning, Sullivan became obviously, heavily intoxicated.  During Sullivan's time at Rick's and while Rick's was continuing to serve Sullivan alcoholic beverages: (1) Sullivan began to smell strongly of alcohol; (2) Sullivan's eyes became extremely watery, glazed, bloodshot and "heavy;" (3) Sullivan began to have a hard time staying awake; (4) Sullivan's speech became extremely slurred; (5) Sullivan's interactions with others became very slow and confused; (6) Sullivan had a hard time standing, walking, or keeping his balance; and (7) Sullivan exhibited sudden abrupt mood swings and outbursts.  Despite the fact that Sullivan was obviously intoxicated to the

extent that he presented a clear danger to himself and others, Rick's management and employees continued to serve Sullivan alcoholic beverages. Rick's management and employees continued to serve Sullivan alcoholic beverages even after the 2:00 a.m. legal cutoff for serving alcohol at the establishment. Rick's employees served numerous alcoholic beverages to Sullivan after he was obviously intoxicated and should not legally have been served. Sullivan's bar tab at Rick's for the morning of March 21, 2014 was approximately $400. When Sullivan finished drinking at Rick's, his blood alcohol level was near or higher than three times the legal limit for operating a motor vehicle in Texas.

4.5     Despite Rick's management and employees' promise that night to Sullivan before he began drinking at Rick's that they would take him home afterward, when Sullivan finished drinking and while he was still obviously intoxicated to the extent that he presented a clear danger to himself and others, Rick's floor manager Jason Cox reneged on that promise. Instead of taking or arranging for Sullivan's safe transport home, Cox said that he did not want to use employees to take Sullivan and his truck home. At approximately 3:30 a.m., Sullivan had a conversation with Rick's floor manager Jason Cox, as well as Rick's bartender Warrick Williams, and Rick's security guard Roland Rodriquez. Jason Cox and Warrick Williams are both employees of Rick's. Roland Rodriquez is an independent contractor hired through a security firm to regularly provide security at Rick's. In the presence of Williams and Rodriquez, Cox told Sullivan, who was obviously intoxicated, that they would not provide Sullivan a ride home, contrary to Rick's management and employees' prior promise. Sullivan asked for his keys back saying that he would use his truck to charge his cell phone battery and call a friend to take him to a hotel. Cox returned Sullivan's keys to him, and Sullivan went to his truck to charge his phone to call for a ride.

4.6     Immediately after returning Sullivan's keys and watching Sullivan walk to his car to charge his phone, Jason Cox had a conversation with Roland Rodriquez in the presence of Warrick Williams.  Despite knowing that Sullivan was going to his truck to charge his phone and call for a ride, after talking to Cox—either at Cox's direction or with Cox's knowledge and ratification—Rodriquez called 911 and falsely reported that Sullivan (who he accurately indicated was too intoxicated to drive) was insisting on driving himself home and falsely reported that Sullivan had gotten in his vehicle and was driving away.  After getting his keys back from Cox, at no point did Sullivan ever attempt to drive his truck.  Instead, Sullivan sat in his truck to charge his phone and try to call for a ride.

4.7     Sullivan had a long-standing, serious and disabling condition in his back, which was well known among all persons who were acquainted with him at the club; he was, however, able to care for himself, drive himself, conduct his business, and live on his own.   Sullivan's disability was very visible to anyone that looked at him, as his neck and shoulders were "hunched" over and he was unable to turn his head without turning his entire body.  Sullivan also had a handicapped placard, indicating his disabled status, prominently displayed hanging from his pickup's rear-view mirror.

4.8     At approximately 3:37am, while Sullivan was sitting in his parked vehicle, attempting to re-charge his depleted cell phone battery so he could call a friend to come get him and take him to a hotel across the highway, officers arrived on the scene in response to Roland Rodriquez's 911 call.  Though Sullivan presented no threat to the Officers, nor to the public at that time, the Officers pulled their weapons and began yelling at Sullivan to "get out of the car" (or using words of similar import).

4.9     Before he was able to respond, and despite the obvious handicapped placard displayed within the officers' clear view, the officers aggressively pulled Sullivan from his vehicle, forcing him into a free-fall face-first to the ground and causing him to crash partly on the ground and partly on the curb in an extreme and excessively forceful manner.  Due to Sullivan's physical limitations and the fact that the officers had hold of both his arms, Sullivan was unable to break his fall or catch himself to prevent serious injury upon landing on the ground.

4.10    Through the Defendants Officers' unnecessary, extremely aggressive, and unreasonable use of force, Sullivan suffered not only injury to his shoulder and serious aggravation to his pre-existing condition but also serious injury to his back and spine, which has resulted in rendering Plaintiff a total quadriplegic.   Because of these devastating and permanent injuries, Sullivan was unable to care for himself or conduct his personal business, and subsequently died because of the injuries.

4.11    Throughout the period of time during which the Round Rock police officers conversed with Sullivan and subsequently "extracted" Sullivan from his vehicle, several Rick's Cabaret employees and agents, including but not limited to Jason Cox, Warrick Williams, and Rolando Rodriquez – who knew Sullivan well, were very familiar with his disability, and knew that he was attempting to charge his cell phone and not to drive away – stood off to the side and watched the entire scene unfold, never once attempting to inform the officers of Sullivan's condition or the real facts of the situation.  Despite having brought the Defendant Officers to the scene by falsely and wrongly reporting the facts to them and creating the dangerous situation that Sullivan was in, Rick's employees and agents did not take any actions to prevent or minimize the clear threat of harm to Sullivan.

4.12     Plaintiff requests and demands that all Defendants in this case retain, preserve, and protect from loss, damage, discard, or destruction all physical, written or electronic items that are, or may be, evidence of the incidents above described, which may form the basis of this Complaint including, but not limited to video, recorded statements, photographs, e-mails, text messages, and personal or official notes made by any of the Officers, employees of the City, or Rick's.

## V.  COUNT 1:    §1983 CLAIMS

5.1     The acts and failures of Defendants on the occasion in question were unreasonable and were the proximate and producing cause of the injuries, aggravation of injuries, damages and aggravation of damages, sustained by Sullivan.  The City of Round Rock is liable to Plaintiffs under 42 U.S.C. §1983 for acting with deliberate indifference in depriving Sullivan of his rights, as demonstrated by the conduct of these Officers, thus breaching the City's duty to provide Officers with adequate supervision, instruction, and training regarding the reasonable use of force, particularly when dealing with handicapped and disabled individuals.

5.2     The officers' excessive, inappropriate, and improper use of force - by jerking, mishandling, and injuring Sullivan, allowing him to free-fall a considerable distance to the ground - was a proximate cause of Sullivan's injuries and damages.  The officers are liable to Plaintiffs under 42 U.S.C. §1983 for deprivation of Sullivan's constitutional rights by their actions under color of law.  The Defendant officers' actions were entirely unreasonable, as shown by the following facts:

   (a)     Sullivan's vehicle plainly displayed a handicapped placard and handicapped plates.  Defendant officers were aware of the handicapped placard on Sullivan's windshield and even commented on it in the dash cam recordings.

    (b)    Despite the handicapped placard displaying Sullivan's status as at least partially incapacitated, Defendant officers unreasonably jerked Sullivan from the vehicle by his arms, preventing him from being able to catch his footing, and caused him to free-fall to the ground face-first, landing on a rough and uneven surface.

    (c)    After the incident, the officers discussed what they could have done differently that would have prevented Sullivan from falling as he did, indicating that even they believe their actions were unreasonable.

    (e)    One of the officers comments on the dashcam recording that, given Sullivan's size and the way the officers pulled him out of the truck, he would have been unable to turn his hips in order to be able to step out of the vehicle without falling.

5.3    The City failed to have a policy, or had an inadequate policy, pertaining to the arrest and/or extraction of physically handicapped persons.

5.4    The City failed to adequately train police officers on arresting and/or extracting physically handicapped persons.

5.5    The acts and omissions of the City of Round Rock and the Officers were the proximate cause of Sullivan's injuries.

## VI. COUNT 2:   NEGLIGENCE AND CAUSATION

6.1    Plaintiffs incorporate the paragraphs above as statements showing the City of Round Rock's negligence and causation.

6.2    Plaintiffs incorporate the paragraphs above as statements showing the Defendant Officers' negligence and causation.

6.3    Defendant Rick's is liable to Plaintiffs under a common law theory of negligence, demonstrated by the following acts:

    (a)    Defendant Rick's undertook the duty to transport Sullivan home.

    (b)    Sullivan relied on Defendant Rick's promises to transport him home when he agreed to stay and drink at Rick's.

    (c)    After Sullivan became intoxicated to the point that he was unable to drive himself home and was a clear danger to himself and others, Defendant Rick's negligently failed to transport Sullivan home.

    (d)    Defendant Rick's then gave Sullivan, who was obviously intoxicated, his keys and allowed him to return to his vehicle.

    (e)    Defendant Rick's then falsely reported to the police that Sullivan was attempting to drive, despite being aware that Sullivan was only attempting to charge his cell phone and not to drive while intoxicated.

    (f)    Despite creating the dangerous situation for Sullivan, Rick's employees stood by and did not inform police that Sullivan was not attempting to drive or that Plaintiff suffered from a handicap.

6.4    The acts and omissions of the City of Round Rock, the Officers, and Rick's were the proximate cause of Sullivan's injuries and subsequent death suffered at the hands of the Round Rock police officers.

## VII. COUNT 3: CLAIM PURSUANT TO ALCOHOLIC BEVERAGES CODE §2.02

7.1    Defendant Rick's is liable to Plaintiffs under §2.02 of the Alcoholic Beverages Code.

7.2    Rick's provided William Slade Sullivan, Deceased, with alcoholic beverages when it was apparent that he was obviously intoxicated to the extent that he presented a clear danger to himself and others.

7.3     William Slade Sullivan, Deceased's intoxication as a result of Rick's acts and omissions was a proximate cause of the damages, injuries and subsequent death of the Plaintiff.

## VIII. DUTY TO DISCLOSE

8.1     All Defendants have the duty, pursuant to the provisions of FRCP 26, to make a full disclosure of all those matters set out in the Rule, specifically including the identity and names of all police individuals, club employees, and other fact witnesses involved in this incident. To the extent that the Defendants have not already complied with FRCP 26, Plaintiff hereby requests these disclosures.

## IX. DAMAGES

9.1     Defendants' acts and omissions, as set out above, are proximate causes of William Slade Sullivan, Deceased's, and Plaintiffs injuries and damages. These damages are far in excess of the minimal jurisdictional limits of this Court and are in excess of ten million dollars. Medical care and treatment, alone, was in excess of several hundred thousand dollars, in addition to the other elements of damage provided by the law such as physical impairment, mental anguish, loss of earnings and earning capacity and the other elements of damages recognized by our law.

## X. ATTORNEY'S FEES

10.1    William Slade Sullivan, Deceased, and Plaintiffs have been required to retain the services of attorneys to represent them in this complex and difficult proceeding and cause of action. Plaintiffs have retained the undersigned attorneys to represent them, and pursuant to 42 U.S.C. §1988(b) of the Federal Civil Rights Act, they are entitled to recover their reasonable and necessary fees incurred for these attorneys, and the reasonable and necessary expenses incurred in the pursuit of this claim at the trial level, the Court of Appeals level if the case is appealed to that Court, and in the Supreme Court of the United States, if necessary.

## XI. J<small>URY</small> D<small>EMAND</small>

11.1   Plaintiffs respectfully demand a trial by jury.

## P<small>RAYER</small>

Plaintiffs ask for judgment against Defendants and prays for:

(a) trial by jury on all issues triable to a jury;

(b) judgment against Defendants, jointly and severally, on behalf of the Plaintiffs for actual damages pursuant to 42 U.S.C. §1983;

(c) statutory and reasonable attorney fees pursuant to 42 U.S.C. §1988(b) of the Federal Civil Rights Act, pre-judgment interest, post-judgment interest, and all of their costs herein expended;

(d) judgment against the Defendants in favor of the Plaintiffs for actual damages; and

(e) any and all additional relief to which the Plaintiffs may appear to be entitled.

Respectfully submitted,

A<small>TTORNEYS FOR</small> P<small>LAINTIFF</small>:

By: /s/ Broadus A. Spivey

| Joe Turner | Broadus A. Spivey |
| --- | --- |
| ATTORNEY AT LAW | LAW OFFICES OF BROADUS A. SPIVEY |
| 1504 West Avenue | 3303 Northland Dr., Suite 205 |
| Austin, TX 78701 | Austin, TX 78731 |
| o: 512-474-4892  f: 512-474-8252 | o: 512-474-6061  f: 512-474-1605 |
| joeturnerpc@gmail.com | bas@spivey-law.com |
| SBOT # 20322500 | SBOT No. 00000076 |

## C<small>ERTIFICATE OF</small> S<small>ERVICE</small>

    I certify that on October 25, 2014, a copy of *Plaintiff's Second Amended Complaint* was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorneys of record:

| *Attorneys for Defendants City and Officers:* | *Attorneys for Defendant RCI:* |
|---|---|
| Archie Carl Pierce<br>Mike Thompson, Jr.<br>W<small>RIGHT</small> & G<small>REENHILL</small>, P.C.<br>221 West 6th Street, Suite 1800<br>Austin, Texas 78701<br>o: 512-476-4600   f: 512-476-5382 | Darrell L. Barger<br>H<small>ARTLINE</small> D<small>ACUS</small> B<small>ARGER</small> D<small>RYER</small>, L.L.P.<br>1980 Post Oak Blvd., Suite 1800<br>Houston, TX 77056<br>o: 713-951-4250   f: 713-652-2419<br><br>Brian S. Rawson<br>Larry D. Grayson<br>Roy B. McKay<br>H<small>ARTLINE</small> D<small>ACUS</small> B<small>ARGER</small> D<small>REYER</small>, L.L.P.<br>6688 N. Central Expressway, Suite 1000<br>Dallas, TX 75206<br>o: 214-369-2100   f: 214-369-2118 |

                  */s/ Broadus A. Spivey*
                  Broadus A. Spivey