UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ROSEMARY SULLIVAN; and <br> AARON BROTHERS, AS INDEPENDENT EXECUTOR OF THE ESTATE OF WILLIAM SLADE SULLIVAN, DECEASED <br>     *Plaintiffs* <br> v. <br> THE CITY OF ROUND ROCK, TEXAS; <br> OFFICERS NATHAN J. ZOSS, KRISTEN A. MAYO, and AARON P. BALLEW; and <br> RCI DINING SERVICES (ROUND ROCK), INC., and RCI HOSPITALITY HOLDINGS, INC. f/k/a RICK'S CABARET INTERNATIONAL, INC., d/b/a RICK'S CABARET <br>     *Defendants* | CIVIL ACTION NO. 1:14-CV-00349-LY <br><br> JURY DEMANDED |

## PLAINTIFFS' RESPONSE TO DEFENDANT OFFICERS NATHAN J. ZOSS, KRISTEN A. MAYO, AND AARON P. BALLEW AND THE CITY OF ROUND ROCK'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE COURT:

NOW COME Plaintiffs, ROSEMARY CLAUS SULLIVAN and AARON BROTHERS, as Independent Executor of the Estate of WILLIAM SLADE SULLIVAN, Deceased (collectively, "Plaintiffs") and file their Response to the Motion for Summary Judgment (the "Motion") filed by Defendants CITY OF ROUND ROCK, OFFICERS NATHAN J. ZOSS, KRISTEN A. MAYO and AARON P. BALLEW (collectively "CORRPD"), and respectfully show as follows:

### I.   INTRODUCTION

**A.  Plaintiff's Claims Against the City and Officers.**

This lawsuit arises from the inappropriate response and inadequate training of the City of Round Rock's police officers, which resulted in the death of William Slade Sullivan. Mr. Sullivan's mother, Rosemary Sullivan, filed this suit, asserting that the City is liable for acting

9301P.065                                1

with deliberate indifference in depriving Mr. Sullivan of his rights, in that (1) the City failed to have a policy, or had an inadequate policy, pertaining to the arrest and/or extraction of physically disabled individuals; and (2) the City failed to adequately train its police officers in arresting and/or extracting physically disabled individuals.

Plaintiff filed suit against the individual officers for their excessive, inappropriate, and improper use of force.  The officers' actions were objectively unreasonable because Mr. Sullivan posed no immediate threat, and the Officers were aware, or should have been aware, of his severe physical disability due to the hanging placard in his windshield.

## B. The City and Officers Move for Summary Judgment.

The City moves for summary judgment on four grounds: (1) there is no evidence a City policy caused Mr. Sullivan's injuries; (2) there is no evidence that the City acted with "deliberate indifference"; (3) the failure to train claim should be dismissed because the City meets the minimum training standards; and (4) the failure to supervise claim should be dismissed because there is no evidence of a pattern of similar violations.

The Officers move for summary judgment on two grounds:  (1) qualified immunity, asserting their actions were objectively reasonable in light of the facts confronting them; and (2) the American Disabilities Act ("ADA") does not apply to this case,  therefore the officers and/or the City were not required to accommodate Mr. Sullivan's disability during his arrest.

As shown below, both the City's and each officer's request for summary judgment should be denied on all grounds.  There is more than sufficient evidence to raise a fact issue as to each and every one of Plaintiff's claims.

## II.  STATEMENT OF FACTS

### A. Mr. Sullivan Attempts to Charge his Phone and Call for a Ride.

On March 21, 2014, Slade Sullivan ("Mr. Sullivan") was a customer of, and had been drinking at Rick's Cabaret, a "gentlemen's club, as he had done on many occasions.  Employees of Rick's, concerned about Mr. Sullivan's sobriety, had taken Mr. Sullivan's keys from him earlier in the evening with the intention of shuttling him home, but they returned the keys to him with the understanding that he would charge his cell phone battery and call a friend to take him to a hotel.  (Exh. 1, page 18-20).  A security guard, Ronaldo Rodriguez, an agent of Rick's, was alerted by another employee that Mr. Sullivan was intoxicated and entering his vehicle, and called the CORRPD.  (Exh. 1, p. 20.).  Mr. Sullivan was sitting in his truck, charging his cell phone when Sgt. Nathan Zoss ("Zoss") arrived.

### B. Mr. Sullivan Fails to Respond Quick Enough to the Officers' Commands.

Upon arrival, Zoss instructed Mr. Sullivan to exit his vehicle.  (Exh. 4).  Confused, Mr. Sullivan stated, "Really, can I not just get in my vehicle to talk on the phone?"  (Exh. 4).  At 3:41 a.m., Officers Kristen Mayo ("Mayo") and Aaron Ballew ("Ballew") arrived in separate vehicles. (Exh. 4).  Zoss directed Mayo to block in Sullivan's truck with a police vehicle.  (Exh. 4).  Mayo parked directly in front of Sullivan's truck, in full view the front window shield, which revealed a handicapped placard.  (Exh. 2).  Zoss continued issuing orders, to which Sullivan calmly replied, "What did I do wrong?"  (Exh. 4).  Zoss then directed Mayo to "extract him."  (Exh. 4).

### C. The Officers Perform a "Double Arm-Bar Takedown."

At 3:42 a.m., Sullivan answered his phone.  (Exh. 4).  Officer Mayo grabbed Sullivan's wrists and attempted to perform an "arm bar" to extract Sullivan, instead of pursing negotiations. (Exh. 2, p. 8-9).  Sullivan did not actively resist, but simply "[held] onto the steering wheel."

(Exh. 2, p. 26; Exh. 4). Video evidence reflects that Sullivan exhibited absolutely no aggressive behavior. (Exh. 4). Struggling with Sullivan's weight. Zoss intervened, grabbing Sullivan's arm and pulled down, forcing him to fall a considerable distance from his elevated truck cab. (Exh. 5, p. 21-22). The Officers failed to control Sullivan's descent, allowing him to smash violently into the ground on his knee and stomach. (Exh. 4). Sullivan was rendered a quadriplegic, and spent the remaining months of his life declining in a hospital. Mr. Sullivan died as a result of these injuries five months later. (Exh. 6).

### III. SUMMARY OF THE ARGUMENT

Summary judgment would be improper in this case, not only because both parties are still three months away from the discovery deadline, but because Plaintiffs have provided sufficient evidence to raise fact issues as to all of Defendants' claims. None of the police officers enjoy qualified immunity, because each violated Mr. Sullivan's constitutional right to freedom from excessive force, and their actions were objectively unreasonable in light of clearly established law. The *Graham* factors confirm this, which emphasizes that the force used must be balanced against the need for such force. The officers have admitted that Mr. Sullivan did not actively resist, or pose a direct threat to their life or safety. In fact, Mr. Sullivan was arrested for two misdemeanors. His injuries alone are serious enough for a jury to infer that such force was excessive to the need. Finally, the video evidence is sufficient to create a fact issue.

The City's failure to train, or failure to provide adequate training, constitutes an actionable policy. Under the "single incident" exception, Plaintiffs have provided sufficient evidence confirming it was highly predictable that Mr. Sullivan would be injured as a result of the City's failure to train, and that the failure to train was the moving force behind his injury. The evidence confirms that the officers received no training as how to "reasonably

accommodate" physical disabilities during the course of an arrest, and that, in general, their training was inadequate.

Defendants claim that they did not have to reasonably accommodate Mr. Sullivan's physical disability because the American Disabilities Act does not apply to an officer's "on the street actions prior to securing the scene and ensuring there is no threat to human life."  *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000).  This argument fails, because fact issues exist as to whether Mr. Sullivan even presented a threat to human life.  Federal courts routinely deny summary judgment in the presence of such critical fact issues.

Excessive force claims, by their very nature, are ill-suited for summary judgment.  In fact, the Fifth Circuit has stated:   "[W]hen determining whether an officer's conduct violate[s] the Fourth Amendment, we must slosh our way through the fact bound morass of reasonableness." *Luna v. Mullenix*, 773 F.3d 712, 719 (5th Cir. 2014) (quoting *Scott v. Harris,* 550 U.S. 372, 383, 127 (2007)).  Courts are to pay "careful attention to the facts and circumstances of each particular case."  *Luna*, 773 F.3d at 719.  "The determination of whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in *rare* cases." *Green v. City and County of San Francisco*, 751 F.3d 1039 (9th Cir. 2014) (emphasis added).  This is not of those "rare" cases.

### IV.  SUMMARY JUDGMENT STANDARD

Although summary judgment is proper in a case in which there is no genuine dispute of material fact, this is not a case in which the Court should grant summary judgment.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact." Fed. R. Civ. P. 56(c).  A genuine issue exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, Inc. 477 U.S. 242, 248 (1986).  All reasonable inferences are drawn in favor of the nonmoving party, but the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007).  In the context of a party asserting immunity in a summary judgment motion, "[o]nce the [movant] asserts this affirmative defense, the burden shifts to the plaintiff to rebut it." *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003).  The court must also resolve all reasonable doubts about the facts in favor of plaintiff as the nonmovant.  *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 455-56 (5th Cir. 2005).

## V. ARGUMENTS AND AUTHORITIES CONCERNING THE OFFICERS

**A. The Officers do not Enjoy Qualified Immunity, Because They Violated Mr. Sullivan's Constitutional Rights and Their Actions Were Objectively Unreasonable.**

Mayo, Ballew, and Zoss violated Mr. Sullivan's constitutional right to be free from excessive force, and their actions were objectively unreasonable.  They claim the defense of qualified immunity, which consist of a two part inquiry:  (1) whether the public official's conduct violated an actual constitutional right; and (2) whether the public official's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008).  The officers fail both tests.

**B. The Officers Violated Mr. Sullivan's Fourth Amendment Right to Freedom From Excessive Force.**

"[T]he Fourth Amendment right to be free from excessive force during a seizure is clearly established."[1]  *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).  The Fifth Circuit's accepted qualified immunity analysis in the excessive force context focuses on: (1) an injury; (2) which resulted from the use of force that was clearly excessive to the need for force; and (3) the excessiveness of which was clearly unreasonable.  *Poole*, 691 F.3d at 628.  The first two elements of Sullivan's Fourth Amendment claim are easily met.  Mr. Sullivan became paralyzed and later died as a result from the Officers' excessive use of force.  At issue is the third element, whether the Officers' use of force was objectively reasonable under the circumstances.  It was not.

C.  **Each *Graham* Factor Weighs in Favor of Mr. Sullivan, Confirming that the Officers' Actions Were Unreasonable.**

In determining whether the force used was clearly excessive or objectively unreasonable, the Supreme Court has noted three sets of facts that courts should closely analyze: (1) the severity of crime at issue; (2) whether the suspect poses an immediate threat to safety of officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The amount of force used must also be balanced against the need for force, *Luna*, 773 F.3d at 719, and evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir.2012).  Based on these factors, each officer's actions were objectively unreasonable.  At the very least, a fact issue exists that precludes summary judgment.

---

[1] In fact, the Fifth Circuit has stated that "the defense of qualified immunity is unavailable to a police officer who the plaintiff has alleged thus used excessive force." *Stevens v. Corbell*, 832 F.2d 884 (5th Cir. 1987).

**(1) The Severity of the Crime.**

The severity of Mr. Sullivan's crime did not merit the amount of force used against him. Mr. Sullivan's crimes consisted of two misdemeanors: (1) driving while intoxicated and (2) interfering with the duties of a public servant. (Exh. 7). A misdemeanor is a lesser criminal offense under Texas law, and the amount of force used should be reduced accordingly. *See Reyes v. Bridgwater*, 362 Fed. Appx. 403, 407, n. 5 (5th Cir. 2010) (citing *Fogarty v. Gallegos*, 523 F.3d 1147, 1160 (10th Cir. 2008)). Misdemeanors do not merit being thrown so aggressively to the ground as to cause complete quadriplegia. The evidence confirms that an intoxicated person, such as Mr. Sullivan "can be persuaded to submit to arrest without the use of any form of force." (Exh. 8, pg. 2).

In *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013), a plaintiff was arrested for "interference with public duties," a misdemeanor that did not merit a severe response. *Id*. The officer used a taser to subdue the arrestee for this crime. *Id*. The "severity of the crime" factor weighed in favor of the plaintiff, because the officer's use of force was disproportional to the crime. *Id*. at 378-79. Similarly, this factor weighs in favor of Sullivan.

**(2) Mr. Sullivan Did Not Pose an Immediate Threat to the Safety of Officers or Others.**

The dashcam recording and record evidence confirms that Mr. Sullivan did not pose an immediate threat to the safety of the officers or other people. Mr. Sullivan was sitting in his truck and charging his phone, and intoxicated to the point that he could not properly address or respond to commands. Zoss and Ballew even admit that Mr. Sullivan did not pose a threat:

> **Q:** Did you ever at any time fear for your own safety in this entire process?
> **Sgt. Zoss:** "Specifically, no. No, - I never felt that there was a direct threat to my life or to my safety." (Exh. 5, p. 44, ln 13-17).

***

> **Q:** . . . Did Mr. Sullivan ever actually present a danger to you?
> **Officer Ballew:** Not at that time. (Exh. 9, p. 15, ln. 9-11).

Sgt. Zoss claims that Sullivan could have fled or used his truck as a weapon. (Exh. 6, p. 45, ln 10-14.) This is impossible, because Sullivan was blocked in by police cruisers. Moreover, Zoss directed Officer Mayo to park a police cruiser directly in front of the Sullivan's vehicle, which he now claims posed a threat. These are not the actions of reasonable police officers. In *Deville*, the fact that the vehicle was not in gear weighed in favor of the arrestee:

> To the extent the officers claim they needed to use force to prevent Deville from fleeing or using the vehicle as a weapon, Deville testified that the car's motor was running but that she never put the vehicle into gear. And it is undisputed that Deville told the offices she was waiting for her husband to arrive, indicating she was not going to flee. *Deville*, 567 F.3d at 168.

It is undisputed that Sullivan never placed his vehicle into gear. (Exh. 4). When Zoss ordered Sullivan to put his hands on his face, Sullivan calmly asked, "What did I do wrong?," then paused to answer his phone. (Exh. 4). At that time, Officer Mayo approached to "use an arm bar to take him out." (Exh. 2, p. 8, ln 20-24). An arm bar requires grabbing onto a person's arm so that it is "locked out," then squatting and rotating so that the individual is "[brought] to the ground." (Exh. 2, p. 8, ln 20-24). However, Sullivan's physical disability did not allow him to rotate his torso, requiring him to turn his whole body for such a maneuver. Regardless, Mayo and Zoss performed a "*double* arm bar takedown" on Sullivan, a disabled, three-hundred pound man, in their effort to pull him from his elevated truck cab. (Exh. 5, pp. 22-23). Afterwards, they even commented that they improperly performed the extraction. (Exh. 4). A reasonable officer would have realized that under the circumstances, such a maneuver would result in great injury. In this case, it did.

 **(3) Mr. Sullivan was Not "Actively" Resisting or Attempting to Evade Arrest.**

A simple refusal to comply with an officer's orders is "passive" resistance, and cannot satisfy this prong of the reasonableness analysis. *Deville*, 567 F.3d at 167, 169. Similarly, when Officer Ballew was asked, "Did [Mr. Sullivan] passively resist, as opposed to actively resist, being extracted," he replied, "I would say yes." (Exh. 10, p. 18).

The video evidence clearly demonstrate that Mr. Sullivan was passively resisting. (Exh. 4). Officer Mayo's Incident report also notes that Mr. Sullivan was "passively" resisting:

> I then told Sullivan to get off the phone as I took hold of his left wrist and began to pull him from the car. **Sullivan continued to passively resist** and Sgt. Zoss grabbed Sullivan's right wrist and we pulled Sullivan from the vehicle.
> (Exh. 3).

At the very least, a fact issue exists as to the nature of Sullivan's resistance. Viewing these facts in a light most favorable to Sullivan, a reasonable jury could find infer that he was not actively resisting arrest. This factor weighs in Sullivan's favor.

The above evidence demonstrates that the officers failed to properly assess "the relationship between the need and the amount of force used." *Deville*, 567 F.3d at 168. The *Graham* factors weighs in Sullivan's favor, which would allow a jury to infer that each officer's use of force was objectively unreasonable. Viewing these facts in the light most favorable to Mr. Sullivan, a jury could find that the degree of force the officers used was not justifiable under the circumstances, because Sullivan posed no immediate threat. As a result, the officers do not enjoy qualified immunity, and their motion for summary judgment should be denied.

**D. The Video of the Arrest is Sufficient to Create a Fact Issue.**

The court must also consider the evidence of the dashcam video in a light most favorable to Sullivan. *Ramirez v. Martinez*, 716 F.3d 369, 378-79 (5th Cir. 2013). In *Ramirez*, the video depicting the struggle between the officer and arrestee was unclear:

> When the videotape begins, Martinez and Ramirez are already yelling at each other. A struggle ensues, but it is unclear exactly what or who precipitates and what constitutes that struggle. There appear to be about five people involved, but none of their faces are visible on the videotape until Ramirez is on his knees. The tape only establishes that the officers forced Ramirez to the ground, an officer placed a black object against Ramirez's back, and Ramirez screamed twice. *Id*. at 375.

In *Ramirez*, the video created a fact issue, in that "it [did] not clearly show a punch or every particular element of the altercation." *Id*. at 375. The instant case is no different. There are four persons involved in the arrest, yet it is unclear exactly what transpired until Sullivan was paralyzed and on the ground. The Dashcam video does not contradict Mr. Sullivan's version of the facts, therefore it must be viewed in a light most favorable to him. (Exh. 4).

In conclusion, none of the officers are entitled to qualified immunity because their actions were not objectively reasonable under the circumstances. Sullivan has provided sufficient evidence that, if viewed in a light most favorable to Mr. Sullivan, would allow a reasonable jury to infer that these Officers used objectively unreasonable force in extracting Sullivan from his vehicle. This is not one of the "rare" cases that should be taken from the hands of a jury. This court should deny the Officers' motion for summary judgment, especially in such a fact-specific case as this.

## VI. ARGUMENTS AND AUTHORITIES CONCERNING THE CITY

### A. The City of Round Rock is Liable for Sullivan's Claims.

A municipality may be sued under § 1983 if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulations, or decision officially adopted and promulgated by that body's officers." *Zarnow v. City of Wichita Falls,* 614 F.3d 161, 166 (5th Cir. 2010). "To establish municipal liability under Section 1983, a plaintiff must prove three

9301P.065                                    11

elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy or custom." *Id*.

### B. The City of Round Rock's Failure to Train Constitutes an Actionable Policy.

An "official policy" can exist by demonstrating a "persistent widespread practice of city officials or employees which is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* at 169. A failure to train municipal employees constitutes an actionable policy, if "in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris,* 489 U.S. 378, 389-90 (1989).

Although deliberate indifference is a stringent standard, a municipality may be liable under the "single incident" exception. *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005). To prevail under this exception, "a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Brown v. Bryan County,* 219 F.3d 450, 458 (2000).

### C. The City's Failure to Train was the Moving Force Behind the Injury.

In *Brown*, a case with surprisingly similar facts, the court found that the available evidence and expert testimony allowed a jury to draw the reasonable inference that the failure to train was the "moving force" behind the injuries suffered by the arrestee. *Id*., at 453. In that case, the officer used an "arm bar" to extract an individual from a truck after the driver turned around from a sobriety checkpoint, which he claimed was necessary because the arrestee "was

9301P.065                                       12

unresponsive to his commands to get out of the vehicle." *Id*. The arrestee did not strike out or actively resist, yet the officer "grabbed her from the truck, and spun her to the ground," causing her to land on the pavement and suffer severe knee injuries. *Id*.

The court found that, according to expert testimony, the officer's conduct "violated basic standard of police conduct." *Id*. at 463. Specifically, a jury could have concluded that the officer's "lack of training in safety precautions and in arrest situations and in actually making the arrest, was the moving force that cause the injuries inflicted upon [arrestee]." *Id*. at 464. (internal citations omitted). The court found that the inadequacy of the officer's training was a policy choice on which § 1983 could lie, and that "the jury could have reasonably concluded that, with training, [the officer] would have used the "arm-bar" technique in a manner so as to not to inflict injury." *Id*. at 465-66.

The instant case and *Brown* are similar. One can reasonably conclude that turning away from a sobriety checkpoint caused the officer in *Brown* to believe the driver was intoxicated, the threshold inquiry in the instant case. Sullivan was unresponsive to commands to get out of the vehicle and was similarly passive, like *Brown*. Officer Mayo and Sgt. Zoss even performed an "arm-bar," the exact same technique. (Exh. 5, pp. 22-23)

Here, the expert testimony allows a jury to reasonably conclude that, with proper training, Mayo and Zoss would have refrained from using the "arm-bar" technique in a manner so as to not to inflict severe injury and death upon Mr. Sullivan. Indeed, expert testimony reveals that the double arm bar performed by Mayo and Zoss "does not conform to any legitimate use of force tactic in the field of law enforcement." (Exh. 8, p. 3). Here, a jury could conclude that the inadequacy of the officer's training was a policy choice, and that Mayo and Zoss would have used their technique differently, or not at all if they had the proper training.

### D. Compliance with TCOLE Cannot Shield the City From Liability.

The City argues that there is no evidence that a policy was the "moving force" behind Mr. Sullivan's injury, and that "mere negligence" by Round Rock policymakers insulates it from municipal liability under § 1983. Motion, p. 16. Defendants' argument rests on the fact that the officers "held state issued peace officer licenses from TCOLE," and claims that "summary judgment for the City is proper in such circumstances." Motion, page 16.

Compliance with TCOLE does not protect the City from the liability it wishes to avoid. The Fifth Circuit has stated clearly stated that "compliance with state training requirements [is] a *factor* counseling against a failure to train theory." *Zarnow,* 614 F.3d at 171 (emphasis added). Other federal courts have rejected arguments similar to the City of Round Rock's. *Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 754 (S.D. Tex. 2011). In *Hobart*, the City of Stafford argued that they could not be held liable under § 1983 for a failure to train claim because the officers were certified under the Texas Commission on Law Enforcement Officer Standards and Education ("TCLEOSE") training standards. *Id*. The City's motion to dismiss was denied. *Id*.

### E. The City cannot avoid liability by claiming the ADA does not apply. The Officers failed to reasonably accommodate Sullivan's Disability.

Defendant claims that the *Hainze* exception applies, which states that "Title II does not apply to an officer's on-the-street responses . . . prior to the officer's securing the scene and ensuring that there is no threat to human life." *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000). In *Hainze*, the court held that Title II did not apply, not because the plaintiff was not denied the protections of disability training by the local government, but because of his own actions in assaulting an officer with a deadly weapon. *Id*. Other courts have noted the "limited principles" that the *Hainze* exception stands for, and the "threat to human life" necessary to

invoke its municipal protection. *See Salinas v. City of New Braunfels,* 557 F.Supp.2d 771, 775. (W.D.Tex.2006).

Federal courts have addressed the applicability of the Title II of the Americans with Disabilities Act ("ADA") to arrests have identified two theoretical bases for these claims. *Gohier v. Enright*, 186 F.3d 1216, 1220 (10th Cir. 1999). Here, the applicable basis is the "reasonable accommodation theory," under which the police properly investigate and arrest a disabled person . . . but fail to reasonably accommodate the person's disability in the course of the arrest, causing that person to suffer greater injury or indignity in that process than other arrestees. *Id*. at 1220-21; *see also Gorman v. Bartch*, 152 F.3d 907, 912-12 (8th Cir. 1998).

Federal Courts in Texas have adopted the reasonable accommodation theory. *Hobart*, 784 F. Supp. 2d at 756. In *Hobart*, the court found it plausible that arrestee had been denied the accommodation for the police to refrain from taking aggressive action "until he presented an immediate threat to human life." *Id*. This rationale comports with the *Hainze* exception.

In *Hobart*, a federal district court in Texas rejected the City's argument that the case was barred by the *Hainze* exception, reasoning that "factual issues remain[ed] as to whether the [arrestee] was denied benefits or discrimination *because* of his disability." *Hobart*, 784 F. Supp. 2d at 758 (distinguishing *Hainze*). Specifically, the plaintiff "presented sufficient evidence to raise factual issues as to whether [arrestee's] actions could reasonably have been interpreted to present any serious threat . . . let alone "threat of human life." *Id*. The court concluded:

> Because those factual issues remain, the Court cannot state as a matter of law that this case falls under the *Hainze* exception precluding ADA and Rehabilitation Act liability in certain police encounter situations; nor can the Court state that Defendants are entitled to judgment as a matter of law that Aaron was not denied benefits or discriminated against *because of* his disability. **This is in line with cases in other courts that have factually distinguished** *Hainze*. *Id*. (emphasis added).

Other federal courts, discussing *Hainze*, routinely deny summary judgment because of similar factual issues.[2] In *Morais*, the district court denied summary judgment, stating that "Defendant's reliance on *Hainze* is misplaced, however, as the exigency of the situation is a materially disputed fact." *Morais*, 2007 WL 853811, at *11. The court found that the police "were not facing the type of pressurized situation that the Fifth Circuit seemed to be contemplating in *Hainze*, because there was no immediate threat to human life." *Id*.

Defendant is correct in its claim that the United State Supreme Court's decision in *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1775, (2015) "seems to approve and adopt [*Hainze*] v. *Richards*." Defendant's Motion, p. 8. In that case, the officers were entitled to qualified immunity, and did not have to provide reasonable accommodations to a mentally disabled person during an arrest because "they were faced with a violent woman who had already threatened to kill her social worker. *Id*. at 1771. Here, the facts are distinguishable, because the evidence demonstrates that Mr. Sullivan did not pose any threat, or at the very least, a fact issue exists. (Exh. 4; Exh. 5, p. 44, ln 13-17). As such, the City's motion for summary judgment should be denied.

F.  **The *Hainze* Exception Does Not Apply Here.**

An officer does not have to provide reasonable accommodations to a disabled individual during an arrest "prior to the officer's securing the scene and ensuring that there is no threat to human life." *Hainze*, 207 F.3d at 801. Absent such an imminent threat, however, the officer must reasonably accommodate the disability, which requires necessary training.

---

[2] *See Salinas v. City of New Braunfels,* 557 F.Supp.2d 771 (W.D.Tex.2006) (denying city's motion to dismiss because deaf plaintiff alleged that the scene had been secure, that she had not posed a threat to the safety of the officers); *Spencer v. Dawson,* 2006 WL 3253574 (N.D.Ill. 2006) (denying summary judgment because a factual issue remained as to whether disabled person was actually threatening anyone's safety)*; but see DeLeon v. City of Alvin Police Dep't,* 2010 WL 4942648, at *3–4 (S.D.Tex. Nov. 30, 2010) (finding that reasonable accommodation theory did not apply because exigent circumstances existed).

Zoss and Ballew have made it clear that there was no threat to human life. Zoss stated: "Specifically, no. No, - I never felt that there was a direct threat to my life or to my safety." (Exh. 5, p. 44, ln 13-17). When asked whether Mr. Sullivan posed a direct threat to him, Officer Ballew stated: "Not at that time." (Exh. 9, p. 15, ln. 9-11). Similarly, Mayo's report states that Mr. Sullivan was "passively resisting," which by its very nature demonstrates the lack of an "immediate threat" or "exigent circumstance." (Exh. 3).

In light of the fact that there was no "immediate harm" the officers should have reasonably accommodated Mr. Sullivan's disability by not performing an arm bar to extract him from his truck. However, these officers could not do so, because they had no training. Mayo concedes that she was not trained to be aware of or deal with physical handicaps:

> **Q:** Had you ever received any training, whether police training or otherwise, about dealing with an individual who was a subject of a potential arrest who had a handicap situation? . . . Anything in Round Rock's training procedures that alerts you as an officer on how to deal with the situation when you realize that a person at least has a handicap placard in their vehicle?
>
> **Officer Mayo:** There is nothing – nothing specific in the way of training . . . we just use common sense and good judgment when we're – we find out that somebody that we're dealing with has a disability.
> (Exh. 2, p. 11, ln 20-24; p. 15, ln 2-18).

Zoss's testimony is similar: "No, there's no specific training on that, just we expect officers to use common sense and good judgment in those sort of situations. (Exh. 5. p. 18, ln 1-11). Zoss also explains how this use of force, in this type of situation, was a widespread policy in the department:

> . . . I think when the commander talked to use about it, told us it was completely within policy and training and within our tactics training and procedures. It was – when they reviewed the incident it was pretty much a nothing deal for them. You know, they – you know, this was prior to the lawsuit, but it was, it was extremely routine and found to be well within our tactics and training. (Exh. 5, p. 35, ln 10-22).

There was no threat of immediate harm, and an absence of sufficient training to properly deal with physically disabled individuals such as Mr. Sullivan.  The City cannot escape liability, and its motion for summary judgment should be denied.  At the very least, Plaintiffs have presented sufficient evidence that raises a factual issue as to whether his actions could reasonably have been interpreted to present any serious threat.  *See Hobart*, 784 F. Supp. 2d at 758.

The police officers demanded instant compliance from Mr. Sullivan, regardless of the risks to his health.  "If it is the deliberate police policy to demand instant compliance, heedless of rights and risks, abuses—i.e., incompetence and misbehavior—will occur when officers of varying judgment and stability encounter resistance."  *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 170 (5th Cir. 1985).

To provide the court with a final perspective, the video reflects a catatonically intoxicated, morbidly obese man sitting in his truck.  He speaks calmly with the officers, and offers no harsh words or active resistance.  He is then thrown out of his car, essentially to his death, while he was on the phone with, presumably, a sober driver.  One cannot claim, after viewing the facts in a light favorable to Mr. Sullivan, that this was the "type of exigent or "type of pressurized situation" that the Fifth Circuit contemplated in *Hainze*.

## PRAYER

For these reasons, Plaintiff asks the Court to deny the Officers' and City of Round Rock's Motions for Summary Judgment.  In the alternative, Plaintiff requests the Court to deny portions of the Defendants' motion that that the Court finds unmeritorious, and pray for any and all other relief.

                                             Respectfully Submitted,

                                             COUNSEL FOR PLAINTIFFS

                                             By: /s/ Broadus A. Spivey

| | |
|---|---|
| Joseph Turner | Broadus A. Spivey |
| State Bar No. 20322500 | State Bar No. 00000076 |
| ATTORNEY AT LAW | LAW OFFICES OF BROADUS A. SPIVEY |
| 1504 West Avenue | 3303 Northland Dr., Suite 205 |
| Austin, Texas 78701 | Austin, Texas 78731 |
| o: 512-474-4892  f: 512-474-8252 | o: 512-474-6061  f: 512-474-1605 |
| joeturnerpc@gmail.com | bas@spivey-law.com |

## CERTIFICATE OF SERVICE

      I hereby certify that on August 6, 2015, the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorneys of record:

*Attorneys for Defendants City and Officers:*

Archie Carl Pierce
Mike Thompson, Jr.
WRIGHT & GREENHILL, P.C.
221 West 6th Street, Suite 1800
Austin, Texas 78701
o: 512-476-4600   f: 512-476-5382

*Attorneys for Defendant RCI:*

Darrell L. Barger
HARTLINE DACUS BARGER DRYER, L.L.P.
1980 Post Oak Blvd., Suite 1800
Houston, TX 77056
o: 713-951-4250   f: 713-652-2419

Brian S. Rawson
Larry D. Grayson
Roy B. McKay
HARTLINE DACUS BARGER DREYER, L.L.P.
8750 N. Central Expressway, Suite 1600
Dallas, TX 75231
o: 214-369-2100   f: 214-369-2118

                                             /s/ Broadus A. Spivey
                                             Broadus A. Spivey