UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROSEMARY CLAUS SULLIVAN; et al. | § | |
| | § | |
| v. | § | NO. 1:14-CV-349-AWA |
| | § | |
| RCI DINING SERVICES (ROUND ROCK), INC. | § | |

## PLAINTIFFS' FIFTH AMENDED COMPLAINT

## I. PARTIES

1.1    Rosemary Sullivan (Mrs. Sullivan) is the surviving mother of William Slade Sullivan (Mr. Sullivan), deceased, and she brings this wrongful death action pursuant to §71.001 et. seq. of the Texas Civil Practice & Remedies Code (TCPRC).

1.2    Aaron Brothers (Mr. Brothers) is named in the will of Mr. Sullivan as the Independent Executor of his estate.   That will was admitted to probate, and Mr. Brothers qualified as Independent Executor of the Estate of William Slade Sullivan, deceased, on September 24, 2014, in Cause No. 14-0633-CP4 in the County Court at Law No. 4 of Williamson County, Texas.  Mr. Sullivan resided within the Austin Division of the Western District of Texas at the time of the filing of this lawsuit.  Mr. Brothers brings this survival cause of action pursuant to §71.021, et seq., of the Texas Civil Practice & Remedies Code (TCPRC).

1.3    Defendant RCI Dining Services (Round Rock), Inc., (Rick's) is a Texas corporation doing business in Texas.  These actions stem from incidents occurring at Rick's Cabaret located at 3105 I-35 in Round Rock, Texas.  Defendant RCI Dining Services (Round Rock), Inc. has been served with process and has appeared and filed an answer in this action.

## II. JURISDICTION AND VENUE

2.1     Plaintiffs initially brought claims pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 and these statutes provided jurisdiction over Plaintiffs' constitutional claims for redress, which are conferred on this Court by 28 U.S.C. §1343(a)(3).

2.2     Federal question jurisdiction is conferred on this Court by 28 U.S.C. §1331, because this action arises under the Constitution and laws of the United States.

2.3     This Court has supplemental jurisdiction over all other claims asserted under the laws of the State of Texas, pursuant to 28 U.S.C. §1367(a).

2.4     Venue is proper in the Western District of Texas, Austin Division, as this is the district where the claim arose in accordance to 28 U.S.C. § 1391(b).

2.5     Plaintiffs bring this action against RCI Dining Services (Round Rock), Inc. at all times d/b/a Rick's Cabaret (all referred to hereafter as "Rick's") under both general theories of common law negligence, as well as pursuant to §2.02 of the Alcoholic Beverages Code and related sections.

## III. FACTS

3.1     Rick's is a "provider" of alcoholic beverages as defined in §2.01 of the Alcoholic Beverages Code, and Rick's provides, sells and serves alcoholic beverages through the Rick's North Austin club involved in this lawsuit.  Mr. Sullivan was a customer of Rick's North Austin club, often buying and drinking alcoholic beverages there.  Because of the large sums of money Mr. Sullivan had spent at Rick's,  Mr. Sullivan was considered by Rick's to be a "VIP" customer and was well known by Rick's management and staff.  As a VIP customer, Mr. Sullivan was allowed to drink in a special section of Rick's and was given extra attention and service from Rick's management, staff, and employees.  In order to encourage Mr. Sullivan to visit and drink

heavily at the establishment, Rick's management and its employees and staff befriended and drank with Mr. Sullivan.  To further encourage Mr. Sullivan to visit and drink heavily at the establishment, on numerous occasions Rick's management and employees offered and provided Mr. Sullivan with transportation home.

3.2     On March 20, 2014, employees of Rick's communicated with Mr. Sullivan in multiple text messages and phone calls to Mr. Sullivan encouraging him to come to Rick's to drink alcoholic beverages.   Waitress Jaymi March set up bottle service for Mr. Sullivan before he arrived at Rick's.  At the time Rick's employees were contacting Mr. Sullivan, they knew him to be lonely and depressed, and they encouraged Mr. Sullivan to come drink with them to have a good time.  To encourage Mr. Sullivan to come drink at Rick's that night, Rick's employees told Mr. Sullivan that they would arrange a ride for him when he was finished.

3.3     In response to the encouragement of Rick's employees, at approximately 11:33 p.m. on March 20, 2014, Mr. Sullivan arrived at Rick's establishment.  Waitress Jaymi March took Sullivan's keys and handed them over to management, stating that he would not be able to drive home that night.  At the encouragement of Rick's management, employees, and staff, Mr. Sullivan stayed at Rick's and consumed numerous alcoholic beverages.

3.4     On the morning of March 21, 2014, Mr. Sullivan stayed at Rick's and consumed several alcoholic beverages until around 3:20 a.m.  During his time at Rick's that morning, Mr. Sullivan was obviously intoxicated.

3.5     During Mr. Sullivan's time at Rick's and while Rick's was continuing to serve Mr. Sullivan alcoholic beverages:

    (1) Mr. Sullivan began to smell strongly of alcohol;

    (2) Mr. Sullivan's eyes became extremely watery, glazed, bloodshot and "heavy;"

(3) Mr. Sullivan began to have a hard time staying awake;

(4) Mr. Sullivan's speech became extremely slurred;

(5) Mr. Sullivan's interactions with others became very slow and confused;

(6) Mr. Sullivan had a hard time standing, walking, or keeping his balance; and

(7) Mr. Sullivan exhibited sudden abrupt mood swings and outbursts.

3.6     Near the end of the night, Mr. Sullivan discovered that "somehow" Rick's employees had run up a bill totaling over $400 and he knew that he had not consumed or given away alcohol to equal that large sum of money.  Thus, he became agitated, argued about the amount of the bill, and ultimately did not want to leave his truck at Rick's overnight.

3.7     Rick's employees should never have surrendered his keys back to Mr. Sullivan in great part because Rick's employees had created the situation that agitated Mr. Sullivan.

3.8     Despite the fact that Mr. Sullivan was obviously intoxicated to the extent that he presented a clear danger to himself and others, Rick's management and employees continued to serve Mr. Sullivan alcoholic beverages.

3.9     Rick's management and employees continued to serve Mr. Sullivan alcoholic beverages and allow Mr. Sullivan to consume alcoholic beverages even after the 2:00 a.m. legal cutoff for serving alcohol at the establishment.

3.10    Rick's employees served alcoholic beverages to Mr. Sullivan after he was obviously intoxicated and should not legally have been served.  Mr. Sullivan's bar tab at Rick's for the morning of March 21, 2014 was between $400 and $500.

3.11    When Mr. Sullivan finished drinking at Rick's, his blood alcohol level was near or higher than three times the legal limit for operating a motor vehicle in Texas.

3.12    Despite Rick's management and employees' promise that night to Mr. Sullivan that they would take him home afterward, when Mr. Sullivan finished drinking and while he was still obviously intoxicated to the extent that he presented a clear danger to himself and others, Rick's floor manager Jason Cox reneged on that promise and returned his keys to him.

3.13    At approximately 3:30 a.m., Mr. Sullivan had a conversation with Rick's floor manager Jason Cox, in the presence of Rick's bartender Warrick Williams, and Rick's security guard Rolando Rodriguez.  Jason Cox and Warrick Williams are both employees of Rick's.

3.14    Rolando Rodriguez is claimed to be an independent contractor hired through a security firm to regularly provide security at Rick's, but under these circumstances his acts and conduct are imputed to Rick's.

3.15    In the presence of Williams and Rodriguez, Cox told Mr. Sullivan, who was obviously intoxicated, that they would not provide Mr. Sullivan a ride to his home, contrary to Rick's management and employees' prior promise. Mr. Sullivan asked for his keys back saying that he would use his truck to charge his cell phone and call a friend to help him get his truck home.

3.16    Mr. Cox returned Mr. Sullivan's keys to him, and Mr. Sullivan went to his truck to charge his phone and began calling for a ride.

3.17    Immediately after returning Mr. Sullivan's keys and watching Mr. Sullivan proceeded to his car to charge his phone, Jason Cox had a conversation with Rolando Rodriguez in the presence of Warrick Williams.

3.18    Despite knowing that Mr. Sullivan was going to his truck to charge his phone and call for a ride, after talking to Cox—either at Cox's direction or with Cox's knowledge and ratification—Rodriguez called 911 and reported that Mr. Sullivan was too intoxicated to drive and was entering his vehicle and was wanting to drive himself home.

3.19    After Mr. Sullivan's keys were returned to him by Mr. Cox, at no point did Mr. Sullivan ever actually attempt to drive his vehicle.

3.20    Instead, Mr. Sullivan sat in his vehicle attempting to charge his phone and began calling and texting friends for help.

3.21    Mr. Sullivan had ankylosing spondylitis, a long-standing, serious and physically disabling condition in his back, which was well known among all persons who were acquainted with him at the club; he was, however, able to care for himself, drive himself, conduct his business, and live on his own. Mr. Sullivan's disability was very visible to anyone that looked at him, as his neck and shoulders were "hunched" over and he was unable to turn his head without turning his entire body.

3.22    At approximately 3:37 am, while Mr. Sullivan was sitting in his parked vehicle, attempting to re-charge his depleted cell phone and while on the phone with a friend asking them to come get him and take him to a hotel across the highway, officers arrived on the scene in response to Rolando Rodriguez's 911 call.  In compliance with the requests of the Officers, Mr. Sullivan turned off his vehicle.

3.23    When the officers removed him from his vehicle, due to his physical limitations, Mr. Sullivan was unable to break his fall or catch himself to prevent serious injury upon landing on the ground.

3.24    Mr. Sullivan sustained injury to his shoulder and serious aggravation of his pre-existing condition and extreme serious injury to his back and spine, which ultimately resulted in rendering Mr. Sullivan a total quadriplegic.  Because of these devastating and permanent injuries of March 21, 2014, Mr. Sullivan was unable to care for himself or conduct his personal business;

remained hospitalized; endured several surgical and medical interventions; and subsequently died on August 18, 2014.

3.25    Throughout the period of time during which the Round Rock police officers conversed with Mr. Sullivan and subsequently "extracted" Mr. Sullivan from his vehicle, several Rick's employees and agents, including but not limited to Jason Cox, Warrick Williams, and Rolando Rodriguez; who knew Mr. Sullivan well; were very familiar with his disability; and knew that he was attempting to charge his cell phone and not to drive away, stood off to the side and watched the entire scene unfold, never once attempting to inform the officers of Mr. Sullivan's condition or the real facts of the situation.  Despite having brought the Officers to the scene by falsely and wrongly reporting the facts to them and creating the dangerous situation that Mr. Sullivan was in, Rick's employees and agents did not take any actions to prevent or minimize the clear threat of harm to Mr. Sullivan.

3.26    Rick's is liable to Plaintiff under general theories of negligence, gross negligence and the common law, as well as §2.02 of the Alcoholic Beverage Code (known as "the Dram Shop Act").

## IV.    COUNT 1: NEGLIGENCE AND GROSS NEGLIGENCE

4.1    Defendant Rick's is liable to Plaintiffs under the common law theory of negligence and gross negligence, demonstrated by the following acts:

   (a)    Defendant Rick's undertook the duty to transport Mr. Sullivan home and took possession of the keys to his vehicle;

   (b)    Mr. Sullivan relied on Defendant Rick's promises to transport him home when he agreed to stay and drink at Rick's;

(c)     After Mr. Sullivan became intoxicated to the point that he was unable to drive himself home and was a clear danger to himself and others, Defendant Rick's negligently failed to transport Mr. Sullivan home;

(d)     Defendant Rick's then gave Mr. Sullivan, who was obviously intoxicated, his keys back and allowed him to return to his vehicle with his keys;

(e)     Defendant Rick's then reported to the police that Mr. Sullivan was attempting to drive, despite being aware that Mr. Sullivan was only attempting to charge his cell phone and not to drive while intoxicated; and

(f)     Despite creating the dangerous situation for Mr. Sullivan, Rick's employees stood by and did not inform police that Mr. Sullivan was not attempting to drive or that he suffered from a handicap.

4.2     The acts and omissions of Rick's were the proximate cause of Sullivan's injuries and subsequent death.

## V.     COUNT 2: CLAIM PURSUANT TO ALCOHOLIC BEVERAGES CODE §2.02 AND THE COMMON LAW OF TEXAS

5.1     Defendant Rick's is liable to Plaintiffs under §2.02 of the Alcoholic Beverages Code.

5.2     Rick's provided Mr. Sullivan with alcoholic beverages when it was apparent that he was obviously intoxicated to the extent that he presented a clear danger to himself and others.

5.3     Mr. Sullivan's intoxication as a result of Rick's acts and omissions was a proximate cause of the damages, injuries and subsequent death of Mr. Sullivan.

## VI. DUTY TO DISCLOSE

6.1     All Defendants have the continuing duty, pursuant to the provisions of FRCP 26, to make a full disclosure of all those matters set out in the Rule, specifically including the identity and

names of all police individuals, club employees, and other fact witnesses involved in this incident.  To the extent that the Defendants have not already complied with FRCP 26, Plaintiffs hereby request these disclosures.

## VII. DAMAGES

7.1     Defendants' acts and omissions, as set out above, are the cause and proximate causes of, and aggravation of Mr. Sullivan's and Plaintiffs injuries and damages.  These damages are far in excess of the minimal jurisdictional limits of this Court and are in excess of ten million dollars.  Medical care and treatment, incurred, was in the area of three million dollars, in addition to the other elements of damage provided by the law such as physical impairment, mental anguish, loss of earnings and earning capacity and the other elements of damages recognized by our law.

## VIII. PRESERVATION OF EVIDENCE

8.1     Plaintiff requests and demands that all Defendants in this case retain, preserve, and protect from loss, damage, discard, or destruction all physical, written or electronic items that are, or may be, evidence of the incidents above described, which may form the basis of this Complaint including, but not limited to video, recorded statements, photographs, e-mails, text messages, and personal or official notes made by any of the Officers, employees of the City, or Rick's.

## IX. JURY DEMAND

9.1     Plaintiffs respectfully demand a trial by jury.

## PRAYER

Plaintiffs ask for judgment against Defendants and pray for:

     (a) trial by jury on all issues triable to a jury;

     (b) judgment against Rick's Cabaret in favor of the Plaintiffs for actual damages;

     (c) judgment against Rick's Cabaret for exemplary or punitive damages; and

     (d) any and all additional relief to which the Plaintiffs may appear to be entitled.


            Respectfully Submitted,


            COUNSEL FOR PLAINTIFF


            By: _Broadus A Spivey_

| | |
|---|---|
| Joseph Turner | Broadus A. Spivey |
|   State Bar No. 20322500 |   State Bar No. 00000076 |
| ATTORNEY AT LAW | Dicky Grigg |
| 1504 West Avenue | LAW OFFICES OF BROADUS A. SPIVEY |
| Austin, Texas  78701 | 3303 Northland Dr., Suite 205 |
| o: 512-474-4892  f: 512-474-8252 | Austin, Texas  78731 |
| joeturnerpc@gmail.com | o: 512-474-6061  f: 512-474-1605 |
| | bas@spivey-law.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2017, the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorneys of record:

***Attorneys for Defendant RCI:***

Darrell L. Barger
HARTLINE DACUS BARGER DRYER, L.L.P.
1980 Post Oak Blvd., Suite 1800
Houston, TX 77056
o: 713-951-4250   f: 713-652-2419

Brian S. Rawson
HARTLINE DACUS BARGER DREYER, L.L.P.
8750 N. Central Expressway, Suite 1600
Dallas, TX 75231
o: 214-369-2100   f: 214-369-2118

_____
Broadus A. Spivey